UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

Linda J. Eisenman, individually
and as Personal Representative of the
Estate of Jeffrey Scott Eisenman; Julie
Eisenman; and, Ryan Eisenman.

        Plaintiffs,

vs.

Carnival Corporation d/b/a
Carnival Cruise Lines,

        Defendant.

_____/

## PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Linda J. Eisenman, individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman; Julie Eisenman, individually; and, Ryan Eisenman, individually, through undersigned counsel, hereby sue Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, and allege as follows:

### CASE SYNOPSIS

*1.   The Eisenman family saved up for a Christmas cruise on the "Carnival Sunshine" (grandparents, children and grand-children).  While the vessel was actually docked in Grand Turk, Jeffrey Eisenman had a serious, but survivable heart attack.   The ship's medical department was unequipped to treat him onboard, but Carnival personnel would not evacuate Mr. Eisenman to an appropriate medical facility.  Carnival kept him on the ship, even though his wife had purchased medical emergency travel insurance in case an event like this arose.  Carnival Sunshine made the decision to leave port with a dying man onboard, rather than appropriately evacuating him to a competent facility. Eleven hours underway from Grand Turk to Puerto Rico, Jeffrey Eisenman died. When the Sunshine docked in Puerto Rico, Carnival would not remove his corpse from the vessel, and insisted that the body be placed in the morgue for the next five days to its final destination in Cape Canaveral.  Some family members were required to stay with the deceased body until they reached the final port.*

*Carnival detained a dying man, with inadequate medical treatment, resulting in a predictable death.*

## The Parties, Jurisdiction, and Venue

2.      Plaintiff, Linda J. Eisenman ("Mrs. Eisenman"), individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman ("Mr. Eisenman") is a resident of the State of Pennsylvania. Mrs. Eisenman was a resident of the State of Pennsylvania at the time of the underlying events.

3.      Mrs. Eisenman, individually, and as personal representative of the Estate of Jeffrey Scott Eisenman, brings this action on behalf of the Estate and on behalf of all survivors who are entitled to recover, including, but not limited, to: Linda Eisenman, wife of decedent; Julie Eisenman, daughter of decedent; Ryan Eisenman, son of decedent.

4.      At all times material hereto, Plaintiff, Julie Eisenman, was a resident of Columbia, South Carolina.

5.      At all times material hereto, Plaintiff, Ryan Eisenman, was a resident of Zebulon, North Carolina.

6.      Defendant, Carnival Corporation d/b/a Carnival Cruise Lines ("Carnival"), is a Panamanian Corporation with its principal place of business at 3655 N.W. 87th Ave., MLGL 815, Miami, Florida 33178.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332 because the amount in controversy exceeds the sum or value of seventy five thousand dollars ($75,000.00), exclusive of interest and costs, and there is complete diversity between the parties hereto. The Court also has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

8.      The Court has jurisdiction over Carnival pursuant to Florida Statutes § 48.193 because (a) Carnival is engaged in substantial and not isolated business activity within this state, and routinely operates in the waters of this state; (b) the causes of action set forth herein arise

2

from Carnival, personally and/or through its agents, operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; and (c) the causes of action set forth herein arise from Carnival, personally and/or through its agents, committing tortious acts in whole or in part within this state.

9.      Venue is proper in this Court because Carnival's principal place of business is within Miami-Dade County and a substantial part of the events or omissions giving rise to the causes of action set forth herein occurred within the county. The cruise line ticket at issue also requires that suit be brought in this Court.

### FACTUAL BACKGROUND

10.      Carnival, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the *Carnival Sunshine*. At all times material hereto, Carnival owned, operated, managed, maintained, and/or controlled the *Carnival Sunshine*, including the medical department.

11.      Carnival, through online, television, radio and print advertisements specifically markets its cruises as family friendly vacations with extensive offerings and activities for people of all ages and abilities. As part of providing vacation cruises, Carnival is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and evacuation decisions.

12.      On December 1, 2018, Linda J. Eisenman and her husband Jeffrey Eisenman, 65 years old, were onboard the *Carnival Sunshine* for a cruise from Port Canaveral, Florida to the Caribbean and back.  They were joined on the cruise by their children Julie Eisenman and Ryan Eisenman, along with their families.  They were all paying passengers.

13.      On the morning of December 3, 2018, the vessel docked in Grand Turk.  At around 1:00 p.m. Jeffrey Eisenman became ill.  He had vomited, was sweating profusely, and

complaining of chest pain and left arm pain. Mrs. Eisenman phoned 911 on the vessel, and a nurse instructed her to bring Mr. Eisenman to the medical facility of the *Carnival Sunshine*. Mrs. Eisenman informed the medical facility that Mr. Eisenman was unable to walk, and a Carnival nurse came to his stateroom with a wheelchair to transport him.

14.    At approximately 2:00 p.m. the ship's doctor examined Mr. Eisenman and quickly diagnosed him as having suffered a major heart attack. He informed Mrs. Eisenman that Mr. Eisenman would possibly need a stent implanted in his heart. It was apparent that Mr. Eisenman needed an immediate medical evacuation off the vessel to an appropriate facility.

15.    The ship's doctor informed the Eisenman's that Mr. Eisenman would need to be flown to Miami because Grand Turk hospital was not equipped with a cardiac unit. He left the Eisenman's with the impression that Mr. Eisenman would be expeditiously taken off the ship in Grand Turk to be flown to Miami from Grand Turk, as soon as possible. The vessel was scheduled to depart from Grand Turk at around 4:00 p.m.

16.    Grand Turk is equipped with an international airport. The flight time from Grand Turk to Miami is approximately one hour and forty five minutes.

17.    Just before 4:00 p.m., with the vessel still sitting in dock in Grand Turk, the ship physician came into the medical center and announced that Jeffrey could not get off the ship because someone else had to be medically disembarked first. Instead of evacuating Jeffrey to receive the care and treatment he urgently needed, the Captain ordered the ship to set sail for San Juan, Puerto Rico - a 21 hour journey by sea farther away from the United States.

*Eisenman v. Carnival Corp., et al.*
*Complaint and Demand for Jury Trial*



18.     At that time Jeffrey Eisenman was awake.  He and his family implored the medical staff of the *Carnival Sunshine* to help him get off the vessel while it was docked in Grand Turk.  His family protested the unreasonable delay, begging and pleading Carnival personnel to get him off the ship.  Carnival's physician had told them that time was of the essence, and they knew the ship's medical center was unequipped to handle a major emergency. The only reasonable option was to get Jeffrey Eisenman off the ship while it was docked safely in Grand Turk or assure his death.  Despite their many cries for help, Carnival utterly failed the Eisenman family and disregarded the life of a critically ill human being.

19.     Adding to the cruel disregard for Jeffrey Eisenman's medical situation, Carnival was aware that the Eisenman family had purchased insurance that would cover an air evacuation in the event of a medical emergency.  The Eisenmans repeatedly demanded that Jeffrey be removed from the vessel before it left Grand Turk- they were in shock and utter disbelief at Carnival's outrageous and indifferent conduct.  They explained that they had purchased insurance for an air ambulance to come and rescue Jeffrey and take him to appropriate medical care in the United States.

5

20.     Carnival is a member of the Cruise Line International Association and subscribes and holds itself accountable to a prescribed standard of conduct as a member of the organization. Carnival's extreme and outrageous conduct is a direct violation of the International Cruise Line Passenger Bill of Rights, adopted by all members of the Cruise Line International Association, which provides all cruise passengers with the following basic right: "The right to disembark a docked ship if essential provisions such as . . . medical care cannot adequately be provided onboard." Carnival had an obligation, and the Eisenman family and Jeffrey had a right, to disembark from the Carnival *Sunshine* while it was docked in Grand Turk. Carnival's extreme and outrageous conduct was a direct violation of the Passenger Bill of Rights.

21.     Inexplicably, all of their requests and pleas for help went unanswered: the *Carnival Sunshine* left Grand Turk with Jeffrey Eisenman and his family confined onboard against their will, helpless against the willful inhumane conduct of Carnival in holding a critically ill man imprisoned in an unequipped medical center. Carnival's conduct towards the Eisenmans and their critically ill patriarch was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Tragically, the Eisenman's nightmare with Carnival was only just beginning.

22.     Once at sea, Mr. Eisenman continued to develop complications. Mr. Eisenman was a diabetic, and while confined to the ship's medical center his blood sugar elevated drastically. The ship's physician was unable to control Mr. Eisenman's blood sugar due to the limitations of the ship's infirmary and medical supply. He lost consciousness.

23.     Mr. Eisenman's condition continued to decline as each precious hour passed. He began to have respiratory problems and was unable to breathe properly. He was administered

oxygen, but his condition still worsened. His family watched on in agony as he slowly slipped away.

24.    At around 3:30 a.m. on the morning of December 4, 2018, Jeffrey Eisenman's condition continued to deteriorate. He had serious trouble breathing so the ship physician decided to intubate him. After intubation, almost twelve hours after the *Sunshine* had left the port of Grand Turk; Mr. Eisenman went into cardiac arrest.

25.    The ship physicians performed CPR on Jeffrey Eisenman. They asked the family if they wished for resuscitation efforts to continue, informing them there was "no realistic hope for recovery." Jeffrey Eisenman died onboard while confined to the medical center of the *Carnival Sunshine* against his will. His family was forced to watch on in horror at his mistreatment and decline into a gruesome death.

26.    The vessel finally arrived in Puerto Rico with Jeffrey Eisenman's dead body onboard. Carnival personnel informed the family that due to the condition of Puerto Rico following the hurricanes, they could not guarantee that Jeffrey's body would get to the continental United States if he was removed.

27.    In a state of devastation and distress, Linda Eisenman and Julie Eisenman left the vessel in Puerto Rico. They had suffered extreme emotional distress at being confined on the vessel against their will following the onset of Jeffrey Eisenman's medical emergency.

28.    Out of concern for his dead father's body, Ryan Eisenman was forced to stay on the vessel until it returned to the United States. He suffered extreme emotional distress as a result of the outrageous ordeal, and additionally by being forced to wait on the vessel with his father's corpse lying dead in the morgue.

29.     At all times material hereto, Carnival officials and employees located in Florida had the ability to monitor and participate in safety, security, and medical emergencies on board the *Carnival Sunshine* by communicating with the ship's crew via telephone, videoconference, Skype and other means of communication. Carnival, through both the crew on board the *Carnival Sunshine* and its officials and employees in Florida, who acted in consultation with one another, failed to properly care for Mr. Eisenman.

30.     All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

## COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

31.     In light of Carnival's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to Carnival that the *Carnival Sunshine* would have passengers similar in age to Plaintiff, and passengers with common illnesses such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

32.     Carnival owed Plaintiff the duty of exercising reasonable care under the circumstances, including a duty of reasonable care under the Death on the High Seas Act, 46 U.S.C. § 30301-30308.  In particular, as Jeffrey Eisenman was ill onboard the *Carnival Sunshine* and reported to the ship's medical center, Carnival owed Plaintiff the duty of protecting him from injury relating to his illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

33.     Carnival breached its duty of protecting Jeffrey Eisenman from injury relating to his illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival breached its duty in one or more of the following ways:

  a.   Carnival failed to medically disembark or evacuate Jeffrey Eisenman while the vessel was docked in Grand Turk, thereby depriving him the essential opportunity to expeditiously receive the treatment and a higher level of care needed to save his life;

  b.   Carnival failed to air-evacuate Jeffrey Eisenman from the ship so that he could promptly receive treatment;

  c.   Carnival failed to evacuate Jeffrey Eisenman by air ambulance back to the United States;

  d.   Carnival failed to assist the family of Jeffrey Eisenman in utilizing the medical travel insurance they had purchased to have him flown back to the United States;

  e.   Carnival failed to contact the United States Coast Guard regarding the need for an air evacuation;

  f.   Carnival refused the multiple requests of Jeffrey Eisenman and his family to be taken off the vessel while it remained docked in Grand Turk;

  g.   Carnival violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as . . . access to medical care cannot be adequately provided onboard," by keeping Jeffrey Eisenman on the vessel against his will;

  h.   Carnival failed to properly assess the condition of Jeffrey Eisenman;

  i.   Carnival failed to properly treat Jeffrey Eisenman;

  j.   Carnival failed to perform or arrange for appropriate diagnostics testing given Jeffrey Eisenman's condition;

  k.   Carnival failed to obtain consultations with appropriate specialists;

  l.   Carnival failed to properly monitor Jeffrey Eisenman;

*Eisenman v. Carnival Cruise Line*
*Complaint and Demand for Jury Trial*

m. Carnival failed to properly consult qualified shore-based personnel regarding Jeffrey Eisenman's condition;

n. Carnival failed to obtain a proper medical opinion regarding Jeffrey Eisenman's condition;

o. Carnival failed to utilize "Telemedicine" and other resources on the vessel to properly assess Jeffrey Eisenman's condition;

p. Carnival failed to develop and institute adequate procedures and policies to address Jeffrey Eisenman's medical situation;

q. Carnival negligently sent Jeffrey Eisenman to a location farther from a medical center capable and equipped to treat her;

r. Carnival failed to appreciate the severity of Jeffrey Eisenman's worsening condition;

s. Carnival failed to perform any procedure to Jeffrey Eisenman's medical benefit;

t. Carnival failed to properly advise Jeffrey Eisenman's family of his transfer options;

u. Carnival failed to properly advise Jeffrey Eisenman's family of her medical disembarkation options;

v. Carnival failed to receive informed consent to keep Jeffrey Eisenman on the vessel;

w. Carnival deviated from the standard of care for treating patients in Jeffrey Eisenman's condition.

34.     Carnival knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Jeffrey Eisenman and took his life. These conditions and failures were longstanding and obvious to Carnival, leaving no doubt that Carnival should have known about them.

35.     As a direct and proximate result of Carnival breaching its duty to Jeffrey Eisenman, he prematurely died. If Jeffrey Eisenman had been timely evacuated from the ship or

received the appropriate care and treatment, he would not have suffered such devastating injuries resulting in death.

WHEREFORE, Plaintiff, Linda J. Eisenman, individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable, including but not limited to damages for loss of support, loss of services, loss of nurture, guidance, care and instruction, loss of inheritance, funeral expenses, interest, court costs, and all other relief this Court deems just and proper.

## COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

36.    In light of Carnival's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to Carnival that the *Carnival Sunshine* would have passengers similar in age to Plaintiff, and passengers with common illnesses such as Plaintiff's condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

37.    Carnival, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival, both on board the *Carnival Sunshine* and located at Carnival's place of business in Miami, Florida, owed Plaintiff the duty of exercising reasonable care under the circumstances, including a duty of reasonable care under the Death on the High Seas Act, 46 U.S.C. § 30301-30308.  In particular, as Jeffrey Eisenman was ill on board the *Carnival Sunshine* and reported to the ship's medical center, Carnival owed the duty of protecting him from injury relating to his illness, and

11

of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

38.     Carnival, through the negligence of its non-medical personnel, breached its duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival breached its duty in one or more of the following ways:

a.     Carnival failed to medically disembark or evacuate Jeffrey Eisenman while the vessel was docked in Grand Turk, thereby depriving him the essential opportunity to expeditiously receive the treatment and a higher level of care needed to save his life;

b.     Carnival failed to air-evacuate Jeffrey Eisenman from the ship so that he could promptly receive treatment;

c.     Carnival failed to evacuate Jeffrey Eisenman by air ambulance back to the United States;

d.     Carnival failed to assist the family of Jeffrey Eisenman in utilizing the medical travel insurance they had purchased to have him flown back to the United States;

e.     Carnival failed to contact the United States Coast Guard regarding the need for an air evacuation;

f.     Carnival refused the multiple requests of Jeffrey Eisenman and his family to be taken off the vessel while it remained docked in Grand Turk;

g.     Carnival violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as . . . access to medical care cannot be adequately provided onboard," by keeping Jeffrey Eisenman on the vessel against his will;

h.     Carnival failed to properly assess the condition of Jeffrey Eisenman;

i.     Carnival failed to properly treat Jeffrey Eisenman;

j.     Carnival failed to perform or arrange for appropriate diagnostics testing given Jeffrey Eisenman's condition;

k.     Carnival failed to obtain consultations with appropriate specialists;

l.   Carnival failed to properly monitor Jeffrey Eisenman;

m.   Carnival failed to properly consult qualified shore-based personnel regarding Jeffrey Eisenman's condition;

n.   Carnival failed to obtain a proper medical opinion regarding Jeffrey Eisenman's condition;

o.   Carnival failed to utilize "Telemedicine" and other resources on the vessel to properly assess Jeffrey Eisenman's condition;

p.   Carnival failed to develop and institute adequate procedures and policies to address Jeffrey Eisenman's medical situation;

q.   Carnival failed by sending Jeffrey Eisenman to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.   Carnival failed to appreciate the severity of Jeffrey Eisenman's worsening condition;

s.   Carnival failed to perform any procedure to Jeffrey Eisenman's medical benefit;

t.   Carnival failed to properly advise Jeffrey Eisenman's family of his transfer options;

u.   Carnival failed to properly advise Jeffrey Eisenman's family of her medical disembarkation options;

v.   Carnival failed to receive informed consent to keep Jeffrey Eisenman on the vessel;

w.   Carnival deviated from the standard of care for treating patients in Jeffrey Eisenman's condition.

39.   Carnival, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Carnival, leaving no doubt that Carnival should have known about them.

40.   As a direct and proximate result of Carnival breaching its duty to Jeffrey Eisenman, he suffered a wrongful death. If Jeffrey Eisenman had been timely evacuated from the

13

Case 1:19-cv-22431-JLK   Document 1   Entered on FLSD Docket 06/12/2019   Page 14 of 31
Eisenman v. Carnival Cruise Line
Complaint and Demand for Jury Trial

ship or received the appropriate care and treatment, he would not have suffered such devastating injuries resulting in death.

WHEREFORE, Plaintiff, Linda J. Eisenman, individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable, including but not limited to damages for loss of support, loss of services, loss of nurture, guidance, care and instruction, loss of inheritance, funeral expenses, interest, court costs, and all other relief this Court deems just and proper.

## COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

41.     Carnival's medical personnel, including the doctors and nurses on board the *Carnival Sunshine*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival. Thus, Carnival is vicariously liable for the acts and/or omissions of its medical personnel.

42.     Carnival acknowledged that its medical personnel, including the doctors and nurses on board the *Carnival Sunshine*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) Carnival directly paid the medical personnel for their work in the medical center on board the *Carnival Sunshine*; (2) the medical center on board the *Carnival Sunshine* was created, owned and operated by Carnival; (3) the medical personnel on board the *Carnival Sunshine* worked at what Carnival describes in its advertising as Carnival's medical center; and (4) Carnival knowingly provided, and the medical personnel on board the *Carnival Sunshine* knowingly wore, uniforms bearing Carnival's name and logo.

43.     Carnival's medical personnel, including the doctors and nurses on board the *Carnival Sunshine*, were subject to the right of control by Carnival, and were acting within the

scope of their employment or agency. For example: (1) the medical personnel were employed by Carnival; (2) the medical personnel were hired to work in a medical center on board the *Carnival Sunshine* that was created, owned and operated by Carnival; (3) the medical personnel were paid salaries and/or other employment related benefits directly by Carnival; (4) the medical personnel on board the *Carnival Sunshine* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by Carnival; (6) Carnival put the medical personnel on board the *Carnival Sunshine* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) Carnival had the right to fire its medical personnel; (8) Carnival used its Sail & Sign program to directly bill the Plaintiff and other passengers onboard the *Carnival Sunshine* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the *Carnival Sunshine* were subject to  the control of Carnival's shore-side medical department located in Miami, Florida.

44.     Carnival, through its medical personnel, owed Jeffrey Eisenman the duty of exercising reasonable care under the circumstances, and owed a statutory duty of reasonable care under the Death on the High  Seas Act, 46 U.S.C. § 30301-30308.  In particular, as Mr. Eisenman was ill on board the *Carnival Sunshine* and reported to the ship's medical center, Carnival owed Mr. Eisenman the duty of protecting him from injury relating to his illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

45.     Carnival, through its medical personnel, breached its duty of protecting Mr. Eisenman from  injury relating to  his  illness,  and  of  exercising reasonable  care to  furnish such  aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival, through its medical personnel, breached its duty in one or more of the following ways:

a.   Carnival failed to medically disembark or evacuate Jeffrey Eisenman while the vessel was docked in Grand Turk, thereby depriving him the essential opportunity to expeditiously receive the treatment and a higher level of care needed to save his life;

b.   Carnival failed to air-evacuate Jeffrey Eisenman from the ship so that he could promptly receive treatment;

c.   Carnival failed to evacuate Jeffrey Eisenman by air ambulance back to the United States;

d.   Carnival failed to assist the family of Jeffrey Eisenman in utilizing the medical travel insurance they had purchased to have him flown back to the United States;

e.   Carnival failed to contact the United States Coast Guard regarding the need for an air evacuation;

f.   Carnival refused the multiple requests of Jeffrey Eisenman and his family to be taken off the vessel while it remained docked in Grand Turk;

g.   Carnival violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as . . . access to medical care cannot be adequately provided onboard," by keeping Jeffrey Eisenman on the vessel against his will;

h.   Carnival failed to properly assess the condition of Jeffrey Eisenman;

i.   Carnival failed to properly treat Jeffrey Eisenman;

j.   Carnival failed to perform or arrange for appropriate diagnostics testing given Jeffrey Eisenman's condition;

k.   Carnival failed to obtain consultations with appropriate specialists;

l.   Carnival failed to properly monitor Jeffrey Eisenman;

m.   Carnival failed to properly consult qualified shore-based personnel regarding Jeffrey Eisenman's condition;

n.   Carnival failed to obtain a proper medical opinion regarding Jeffrey Eisenman's condition;

o.  Carnival failed to utilize "Telemedicine" and other resources on the vessel to properly assess Jeffrey Eisenman's condition;

p.  Carnival failed to develop and institute adequate procedures and policies to address Jeffrey Eisenman's medical situation;

q.  Carnival failed by sending Jeffrey Eisenman to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.  Carnival failed to appreciate the severity of Jeffrey Eisenman's worsening condition;

s.  Carnival failed to perform any procedure to Jeffrey Eisenman's medical benefit;

t.  Carnival failed to properly advise Jeffrey Eisenman's family of his transfer options;

u.  Carnival failed to properly advise Jeffrey Eisenman's family of her medical disembarkation options;

v.  Carnival failed to receive informed consent to keep Jeffrey Eisenman on the vessel;

w.  Carnival deviated from the standard of care for treating patients in Jeffrey Eisenman's condition.

46.     Carnival, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Carnival, leaving no doubt that Carnival should have known about them.

47.     As a direct and proximate result of Carnival breaching its duty to Jeffrey Eisenman, he suffered a wrongful death. If Jeffrey Eisenman had been timely evacuated from the ship or received the appropriate care and treatment, he would not have suffered such devastating injuries resulting in death.

WHEREFORE, Plaintiff, Linda J. Eisenman, individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman, respectfully requests that this Court enter judgment

against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable under the Death on the High Seas Act, including but not limited to damages for loss of support, loss of services, loss of nurture, guidance, care and instruction, loss of inheritance, funeral expenses, interest, court costs, and all other relief this Court deems just and proper.

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Apparent Agency)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

48.     Carnival's medical personnel, including the doctors and nurses on board the *Carnival Sunshine*, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of Carnival. Thus, Carnival is vicariously liable for the acts and/or omissions of its medical personnel.

49.     Carnival made representations to the Plaintiff and other passengers onboard the *Carnival Sunshine* that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Carnival's benefit. For example: (1) Carnival promoted the medical personnel on board the *Carnival Sunshine* and represented them as being Carnival employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) Carnival promoted the medical center on board the *Carnival Sunshine* and described it in proprietary language; (3) the medical personnel on board the *Carnival Sunshine* worked in the medical center that Carnival promoted and described in proprietary language; (4) Carnival used its Sail & Sign program to directly bill the Plaintiff and other passengers onboard the *Carnival Sunshine* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the *Carnival Sunshine* were required to wear uniforms or other insignia furnished by Carnival; (6) Carnival held out the medical personnel on board the *Carnival Sunshine* as members of the ship's crew; and (7) the medical personnel on board the *Carnival Sunshine* spoke and acted as

18

though they were employed by Carnival. Carnival had knowledge of such representations but never took any action to indicate otherwise.

50.     Carnival's representations to the Plaintiffs and other passengers onboard the *Carnival Sunshine* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for Carnival's benefit. Indeed, Carnival actually intended that the Plaintiff and other passengers onboard the *Carnival Sunshine* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on Carnival's ships in the first place, to feel secure while on board Carnival's ships and/or to be a repeat Carnival customer.

51.     Carnival's representations to the Plaintiffs and other passengers onboard the *Carnival Sunshine* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mr. Eisenman and his wife justifiably relied upon Carnival's representations in deciding to purchase a cruise on the *Carnival Sunshine*. Mr. Eisenman and his wife also justifiably relied upon Carnival's representations while onboard the *Carnival Sunshine* in following the advice of the ship's medical personnel with respect to the examination, diagnosis and treatment of Mr. Eisenman. Such reliance was also detrimental as Mr. Eisenman ultimately suffered injuries that resulted in his death because of it.

52.     Carnival, through its medical personnel, owed Mr. Eisenman the duty of exercising reasonable care under the circumstances, including a duty of reasonable care under the Death on the High Seas Act, 46 U.S.C. § 30301-30308.  In particular, as Mr. Eisenman was ill on board the *Carnival Sunshine* and reported to the ship's medical center, Carnival owed Mr. Eisenman the duty of protecting him from injury relating to his illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

53.     Carnival, through its medical personnel, breached its duty of protecting Mr. Eisenman from injury relating to his illness, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. Carnival, through its medical personnel, breached its duty in one or more of the following ways:

a.     Carnival failed to medically disembark or evacuate Jeffrey Eisenman while the vessel was docked in Grand Turk, thereby depriving him the essential opportunity to expeditiously receive the treatment and a higher level of care needed to save his life;

b.     Carnival failed to air-evacuate Jeffrey Eisenman from the ship so that he could promptly receive treatment;

c.     Carnival failed to evacuate Jeffrey Eisenman by air ambulance back to the United States;

d.     Carnival failed to assist the family of Jeffrey Eisenman in utilizing the medical travel insurance they had purchased to have him flown back to the United States;

e.     Carnival failed to contact the United States Coast Guard regarding the need for an air evacuation;

f.     Carnival refused the multiple requests of Jeffrey Eisenman and his family to be taken off the vessel while it remained docked in Grand Turk;

g.     Carnival violated the International Cruise Line Bill of Rights, which states that passengers have "[t]he right to disembark a docked ship if essential provisions such as . . . access to medical care cannot be adequately provided onboard," by keeping Jeffrey Eisenman on the vessel against his will;

h.     Carnival failed to properly assess the condition of Jeffrey Eisenman;

i.     Carnival failed to properly treat Jeffrey Eisenman;

j.     Carnival failed to perform or arrange for appropriate diagnostics testing given Jeffrey Eisenman's condition;

k.     Carnival failed to obtain consultations with appropriate specialists;

l.     Carnival failed to properly monitor Jeffrey Eisenman;

m.  Carnival failed to properly consult qualified shore-based personnel regarding Jeffrey Eisenman's condition;

n.  Carnival failed to obtain a proper medical opinion regarding Jeffrey Eisenman's condition;

o.  Carnival failed to utilize "Telemedicine" and other resources on the vessel to properly assess Jeffrey Eisenman's condition;

p.  Carnival failed to develop and institute adequate procedures and policies to address Jeffrey Eisenman's medical situation;

q.  Carnival failed by sending Jeffrey Eisenman to a geographically farther location than the vessel from a medical center capable and equipped to treat her;

r.  Carnival failed to appreciate the severity of Jeffrey Eisenman's worsening condition;

s.  Carnival failed to perform any procedure to Jeffrey Eisenman's medical benefit;

t.  Carnival failed to properly advise Jeffrey Eisenman's family of his transfer options;

u.  Carnival failed to properly advise Jeffrey Eisenman's family of her medical disembarkation options;

v.  Carnival failed to receive informed consent to keep Jeffrey Eisenman on the vessel;

w.  Carnival deviated from the standard of care for treating patients in Jeffrey Eisenman's condition.

54.     Carnival, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to Carnival, leaving no doubt that Carnival should have known about them.

55.     As a direct and proximate result of Carnival breaching its duty to Jeffrey Eisenman, he suffered a wrongful death. If Jeffrey Eisenman had been timely evacuated from the

ship or received the appropriate care and treatment, he would not have suffered such devastating injuries resulting in death.

WHEREFORE, Plaintiff, Linda J. Eisenman, individually and as Personal Representative of the Estate of Jeffrey Scott Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable, including but not limited to damages for loss of support, loss of services, loss of nurture, guidance, care and instruction, loss of inheritance, funeral expenses, interest, court costs, and all other relief this Court deems just and proper.

## COUNT V –LINDA J. EISENMAN'S COUNT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

56.     Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct with intent to cause, or reckless disregard to the probability of causing emotional distress to Linda J. Eisenman.  The extreme and outrageous conduct exhibited by Carnival, its agents, servants, and employees, caused Linda J. Eisenman to suffer severe emotional distress.

57.     Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct.  Carnival's conduct towards Linda J. Eisenman was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  On December 3, 2018, with the *Carnival Sunshine* safely docked in Grand Turk, Carnival refused to assist Linda J. Eisenman in removing her critically ill husband from the vessel.  Carnival first falsely informed Linda J. Eisenman that her husband was to be taken off the vessel prior to its debarkation for a 20 hour voyage at sea towards Puerto Rico.  Thereafter, without a valid or plausible reason or explanation, Carnival changed its mind and refused to assist Jeffrey Eisenman, a man suffering

from a massive heart attack, to disembark from the vessel while it was safely docked in port. Linda J. Eisenman begged, pleaded and implored Carnival personnel to assist her and let her husband and family off the vessel, to which Carnival refused. Jeffrey Eisenman, in the throes of a cardiac incident, was unable to walk and was effectively imprisoned in the ship's medical center against his will, as was Linda Eisenman. Linda Eisenman informed Carnival that she had purchased special travel insurance in case of a medical emergency, that expense was not a concern, and that she wanted Jeffrey Eisenman off the vessel while it was docked in Grand Turk so that he could be properly cared for. Despite these reasonable pleas for basic assistance, and notwithstanding the extreme ease of removing Jeffrey Eisenman from the vessel, Carnival mislead Linda Eisenman, refused to assist her, and the ship left the safety of the port of Grand Turk and headed to sea with Linda Eisenman and her critically ill husband trapped onboard against their will. Linda Eisenman, and the rest of the Eisenman family, was forced as a result of Carnival's outrageous conduct to endure a sea voyage where they had to look on in horror as Jeffrey Eisenman's condition worsened and he deteriorated into a painful death trapped at sea.

58.    Carnival is the world's largest leisure and Travel Company and the world's largest cruise company with a fleet of 102 ships visiting more than 700 ports around the world. It has the technical skill and expertise and the logistical and operational capacity to easily medically disembark a critically ill passenger, especially when its vessel is safely docked in port and a passenger is imploring, pleading, and begging to leave the ship. Grand Turk has an international airport a short distance from the cruise port. Flights from Grand Turk to Miami can be accomplished in one hour and forty five minutes. Air ambulances will travel to Grand Turk to pick up sick and injured individuals; the United States Coast Guard will arrange air ambulances to transport sick and injured individuals from Grand Turk; and the Eisenman's informed Carnival that they would arrange for an air ambulance with the insurance they had purchased for

23

the cruise.  Grand Turk also has a hospital on the island that is managed by Canadian company InterHealth Canada with standard monitored by Accreditation Canada International.  All of the resources to assist Linda Eisenman were right at Carnival's fingertips, underscoring the extreme and outrageous nature of its actions.   Carnival's conduct in refusing to help Linda Eisenman and misleading her on her husband's status go far beyond all possible bounds of decency, and are to be regarded as atrocious, and utterly intolerable.

59.     Carnival is a member of the Cruise Line International Association and subscribes and holds itself accountable to a prescribed standard of conduct as a member of the organization. Carnival's extreme and outrageous conduct is a direct violation of the International Cruise Line Passenger Bill of Rights, adopted by all members of the Cruise Line International Association, which provides all cruise passengers with the following basic right: "The right to disembark a docked ship if essential provisions such as . . . medical care cannot adequately be provided onboard."  Carnival had an obligation, and Linda Eisenman had a right, to disembark from the Carnival Sunshine while it was docked in Grand Turk.  Carnival's extreme and outrageous conduct was a direct violation of the Passenger Bill of Rights.

60.     As a direct result of Carnival's extreme and outrageous conduct, Linda J. Eisenman was caused to suffer severe emotional distress.  The anguish and emotional distress caused by Carnival's extreme and outrageous conduct was directly and personally experienced Linda J. Eisenman.

61.     Carnival is liable for punitive damages because it conducted itself in a wanton, willful and outrageous fashion as described in this count above.

WHEREFORE, Plaintiff, Linda J. Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all

damages recoverable under the law, punitive damages, interest, court costs, and all other relief this Court deems just and proper.

## COUNT VI – JULIE EISENMAN'S COUNT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

62.      Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct with intent to cause, or reckless disregard to the probability of causing emotional distress to Julie Eisenman.   The extreme and outrageous conduct exhibited by Carnival, its agents, servants, and employees, caused Julie Eisenman to suffer severe emotional distress.

63.      Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct.  Carnival's conduct towards Julie Eisenman was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  On December 3, 2018, with the *Carnival Sunshine* safely docked in Grand Turk, Carnival refused to assist Julie Eisenman in removing her critically ill father from the vessel.  Carnival first falsely informed Julie Eisenman that her father was to be taken off the vessel prior to its debarkation for a 20 hour voyage at sea towards Puerto Rico.  Thereafter, without a valid or plausible reason or explanation, Carnival changed its mind and refused to assist Jeffrey Eisenman, a man suffering from a massive heart attack, to disembark from the vessel while it was safely docked in port.  Julie Eisenman begged, pleaded and implored Carnival personnel to assist her and let her husband and family off the vessel, to which Carnival refused.  Jeffrey Eisenman, in the throes of a cardiac incident, was unable to walk and was effectively imprisoned in the ship's medical center against his will, as was Julie Eisenman.  Julie Eisenman informed Carnival that she had purchased special travel insurance in case of a medical emergency, that expense was not a concern, and that she wanted

Case 1:19-cv-22431-JLK   Document 1   Entered on FLSD Docket 06/12/2019   Page 26 of 31
*Eisenman v. Carnival Cruise Line*
*Complaint and Demand for Jury Trial*

Jeffrey Eisenman off the vessel while it was docked in Grand Turk so that he could be properly cared for.  Despite these reasonable pleas for basic assistance, and notwithstanding the extreme ease of removing Jeffrey Eisenman from the vessel, Carnival mislead Julie Eisenman, refused to assist her, and the ship left the safety of the port of Grand Turk and headed to sea with Julie Eisenman and her critically ill father trapped onboard against their will.  Julie Eisenman, and the rest of the Eisenman family, was forced as a result of Carnival's outrageous conduct to endure a sea voyage where they had to look on in horror as Jeffrey Eisenman's condition worsened and he deteriorated into a painful death trapped at sea.

64.     Carnival is the world's largest leisure and Travel Company and the world's largest cruise company with a fleet of 102 ships visiting more than 700 ports around the world. It has the technical skill and expertise and the logistical and operational capacity to easily medically disembark a critically ill passenger, especially when its vessel is safely docked in port and a passenger is imploring, pleading, and begging to leave the ship.  Grand Turk has an international airport a short distance from the cruise port.  Flights from Grand Turk to Miami can be accomplished in one hour and forty five minutes.  Air ambulances will travel to Grand Turk to pick up sick and injured individuals; the United States Coast Guard will arrange air ambulances to transport sick and injured individuals from Grand Turk; and the Eisenman's informed Carnival that they would arrange for an air ambulance with the insurance they had purchased for the cruise.  Grand Turk also has a hospital that is run by the Canadian government.  All of the resources to assist Julie Eisenman were right at Carnival's fingertips, underscoring the extreme and outrageous nature of its actions.  Carnival's conduct in refusing to help Julie Eisenman and misleading her on her father's status go far beyond all possible bounds of decency, and are to be regarded as atrocious, and utterly intolerable.

65.     Carnival is a member of the Cruise Line International Association and subscribes and holds itself accountable to a prescribed standard of conduct as a member of the organization. Carnival's extreme and outrageous conduct is a direct violation of the International Cruise Line Passenger Bill of Rights, adopted by all members of the Cruise Line International Association, which provides all cruise passengers with the following basic right: "The right to disembark a docked ship if essential provisions such as . . . medical care cannot adequately be provided onboard." Carnival had an obligation, and Julie Eisenman had a right, to disembark from the Carnival Sunshine while it was docked in Grand Turk. Carnival's extreme and outrageous conduct was a direct violation of the Passenger Bill of Rights.

66.     As a direct result of Carnival's extreme and outrageous conduct, Julie Eisenman was caused to suffer severe emotional distress. The anguish and emotional distress caused by Carnival's extreme and outrageous conduct was directly and personally experienced Julie Eisenman.

67.     Carnival is liable for punitive damages because it conducted itself in a wanton, willful and outrageous fashion as described in this count above.

WHEREFORE, Plaintiff, Julie Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable under the law, punitive damages, interest, court costs, and all other relief this Court deems just and proper.

## COUNT VII –RYAN EISENMAN'S COUNT FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 30 of this Complaint.

68.     Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct with intent to cause, or reckless disregard to the probability of causing emotional distress to Ryan Eisenman. The extreme and outrageous conduct

exhibited by Carnival, its agents, servants, and employees, caused Ryan Eisenman to suffer severe emotional distress.

69.     Carnival, its agents, servants, and employees engaged and acted in extreme and outrageous conduct.  Carnival's conduct towards Ryan Eisenman was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  On December 3, 2018, with the *Carnival Sunshine* safely docked in Grand Turk, Carnival refused to assist Ryan Eisenman in removing his critically ill father from the vessel.  Carnival first falsely informed Ryan Eisenman that his father was to be taken off the vessel prior to its debarkation for a 20 hour voyage at sea towards Puerto Rico.  Thereafter, without a valid or plausible reason or explanation, Carnival changed its mind and refused to assist Jeffrey Eisenman, a man suffering from a massive heart attack, to disembark from the vessel while it was safely docked in port.  Ryan Eisenman begged, pleaded and implored Carnival personnel to assist him and let his father and family off the vessel, to which Carnival refused.  Jeffrey Eisenman, in the throes of a cardiac incident, was unable to walk and was effectively imprisoned in the ship's medical center against his will, as was Ryan Eisenman.  Ryan Eisenman informed Carnival that his family had purchased special travel insurance in case of a medical emergency, that expense was not a concern, and that he wanted Jeffrey Eisenman off the vessel while it was docked in Grand Turk so that he could be properly cared for.  Despite these reasonable pleas for basic assistance, and notwithstanding the extreme ease of removing Jeffrey Eisenman from the vessel, Carnival mislead Ryan Eisenman, refused to assist him, and the ship left the safety of the port of Grand Turk and headed to sea with Ryan Eisenman and her critically ill father trapped onboard against their will.  Ryan Eisenman, and the rest of the Eisenman family, was forced as a result of Carnival's outrageous

Case 1:19-cv-22431-JLK   Document 1   Entered on FLSD Docket 06/12/2019   Page 29 of 31

*Eisenman v. Carnival Cruise Line*
*Complaint and Demand for Jury Trial*

conduct to endure a sea voyage where they had to look on in horror as Jeffrey Eisenman's condition worsened and he deteriorated into a painful death trapped at sea.

70.     Carnival is the world's largest leisure and Travel Company and the world's largest cruise company with a fleet of 102 ships visiting more than 700 ports around the world. It has the technical skill and expertise and the logistical and operational capacity to easily medically disembark a critically ill passenger, especially when its vessel is safely docked in port and a passenger is imploring, pleading, and begging to leave the ship.  Grand Turk has an international airport a short distance from the cruise port.  Flights from Grand Turk to Miami can be accomplished in one hour and forty five minutes.  Air ambulances will travel to Grand Turk to pick up sick and injured individuals; the United States Coast Guard will arrange air ambulances to transport sick and injured individuals from Grand Turk; and the Eisenman's informed Carnival that they would arrange for an air ambulance with the insurance they had purchased for the cruise.  Grand Turk also has a hospital that is run by the Canadian government.  All of the resources to assist Ryan Eisenman were right at Carnival's fingertips, underscoring the extreme and outrageous nature of its actions.   Carnival's conduct in refusing to help Ryan Eisenman and misleading her on her father's status go far beyond all possible bounds of decency, and are to be regarded as atrocious, and utterly intolerable.

71.     Carnival is a member of the Cruise Line International Association and subscribes and holds itself accountable to a prescribed standard of conduct as a member of the organization. Carnival's extreme and outrageous conduct is a direct violation of the International Cruise Line Passenger Bill of Rights, adopted by all members of the Cruise Line International Association, which provides all cruise passengers with the following basic right: "The right to disembark a docked ship if essential provisions such as . . . medical care cannot adequately be provided onboard."  Carnival had an obligation, and Julie Eisenman had a right, to disembark from the

Case 1:19-cv-22431-JLK   Document 1   Entered on FLSD Docket 06/12/2019   Page 30 of 31
Eisenman v. Carnival Cruise Line
Complaint and Demand for Jury Trial

Carnival Sunshine while it was docked in Grand Turk.  Carnival's extreme and outrageous conduct was a direct violation of the Passenger Bill of Rights.

72.     Carnival also refused to remove Jeffrey Eisenman's corpse from the vessel after her died to return it to the United States quickly and with dignity.  Instead, his dead body was stored in the Carnival Sunshine's morgue until the vessel finished its eleven day voyage.  Ryan Eisenman was forced to stay on the vessel until it returned to the United States on account of Carnival's ongoing outrageous conduct.  He suffered extreme emotional distress following the outrageous ordeal and additionally emotional distress by being forced to wait on the vessel with his father's corpse lying dead in the morgue.

73.     As a direct result of Carnival's extreme and outrageous conduct, Ryan Eisenman was caused to suffer severe emotional distress.  The anguish and emotional distress caused by Carnival's extreme and outrageous conduct was directly and personally experienced Ryan Eisenman.

74.     Carnival is liable for punitive damages because it conducted itself in a wanton, willful and outrageous fashion as described in this count above.

WHEREFORE, Plaintiff, Ryan Eisenman, respectfully requests that this Court enter judgment against the Defendant, Carnival Corporation d/b/a Carnival Cruise Lines, for all damages recoverable under the law, punitive damages, interest, court costs, and all other relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims set forth herein.

Dated this 11th day of June, 2019.

Respectfully submitted,

By: _____

**Ira H. Leesfield** (FBN 140270)
Email: Leesfield@leesfield.com
**Thomas D. Graham** (FBN 89043)
Email: graham@leesfield.com
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile:  305-854-8266
***ATTORNEYS FOR PLAINTIFF***

31