# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

CASE NO. 1:19-cv-22431-JLK

LINDA J. EISENMAN, JULIE EISENMAN,
and RYAN EISENMAN,

    Plaintiffs,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

## ORDER DENYING CARNIVAL CORPORATION'S MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Carnival Corporation's Motion to Dismiss, filed July 25, 2019 (DE 10) (the "Motion"). The Court has also considered Plaintiffs' Response in Opposition (DE 14) and Carnival's Reply Memorandum in Support of the Motion (DE 17), and heard oral argument on the Motion on November 14, 2019.

## I. BACKGROUND[1]

Plaintiffs bring this maritime wrongful death action against Carnival asserting claims for (1) negligence under the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 ("DOHSA") (Counts I through IV) and (2) intentional infliction of emotional distress (Counts V through VII). According to the allegations in the Complaint, on December 1, 2018, Linda Eisenman and her husband Jeffrey Eisenman boarded Carnival's *Sunshine* vessel with their children (Plaintiffs Julie and Ryan) for a cruise from Florida to the Caribbean. (*See* Compl. ¶ 12, DE 1.) On the morning of December 3, 2018, the ship docked in Grand Turk. (*Id.* ¶ 13.) At around 1:00 p.m.,

---

[1] The factual allegations in the Complaint are accepted as true and construed in the light most favorable to Plaintiffs for purposes of ruling on Carnival's Motion to Dismiss. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

Jeffrey became ill and had to be taken to the ship's medical center in a wheelchair. (*Id.*) The ship physician "quickly diagnosed [Jeffrey] as having suffered a major heart attack," and told the Eisenmans that he "would need to be flown to Miami because Grand Turk hospital was not equipped with a cardiac unit." (*Id.* ¶¶ 14–15.) The ship was still docked in Grand Turk at the time, which has an international airport with flights to Miami. (*Id.* ¶ 16.)

However, just before 4:00 p.m., the ship physician came back into the medical center and announced that Jeffrey could not get off the ship because someone else had to be medically disembarked first. (*Id.* ¶ 17.) The Eisenmans begged and pleaded with Carnival to let them off the ship in Grand Turk because the physician had "told them that time was of the essence." (*Id.* ¶ 18.) They also explained that they had purchased insurance to cover an air evacuation in the event of a medical emergency. (*Id.* ¶ 19.) Also, according to Carnival's "Passenger Bill of Rights," all cruise passengers have the "right to disembark a docked ship if essential provisions such as . . . medical care cannot adequately be provided onboard." (*Id.* ¶ 20.) Nonetheless, Carnival refused to let the Eisenmans off the ship, and instead decided to set sail for San Juan, Puerto Rico—a 21-hour journey by sea farther away from the United States. (*Id.* ¶ 17.)

Once at sea, Jeffrey's condition continued to decline. (*Id.* ¶ 22.) He lost consciousness and began having respiratory problems. (*Id.*) "His family watched on in agony as he slowly slipped away." (*Id.*) Almost twelve hours after the ship left Grand Turk, Jeffrey went into cardiac arrest. (*Id.* ¶ 24.) Jeffrey Eisenman died onboard while confined to the ship's medical center. (*Id.*) In a state of devastation and distress, Linda and Julie Eisenman left the ship when it arrived in Puerto Rico. (*Id.* ¶ 27.) The Complaint alleges that they "suffered extreme emotional distress at being confined on the vessel against their will following the onset of Jeffrey

2

Eisenman's medical emergency." (*Id.*) Ryan Eisenman stayed on the ship with his father's body as Carnival finished its eleven-day cruise. (*Id.* ¶¶ 28, 72.)

On June 12, 2019, Plaintiffs filed this action alleging that Jeffrey Eisenman's death resulted from the negligence of Carnival and its medical and non-medical personnel (Counts I through IV). Plaintiffs also assert claims for intentional infliction of emotional distress in their individual capacities, alleging that Carnival's conduct was "extreme and outrageous" and caused them to suffer severe emotional distress (Counts V through VII). Carnival now moves to dismiss the Complaint for failure to state a claim. (*See generally* Mot., DE 10.) Carnival argues that the emotional distress claims should be dismissed because (a) they are preempted by DOHSA, and (b) Carnival's conduct was not sufficiently "outrageous" to state a claim. (*Id.* at 3.) Carnival also argues that the negligence claims should be dismissed as improper "shotgun" pleadings that group multiple theories of liability in each count. (*Id.*)

## II. LEGAL STANDARD

"At the motion to dismiss stage, a court does not reach the merits of the suit, only the sufficiency of the complaint." *Elbaz v. Royal Caribbean Cruises, Ltd.*, No. 16-24568, 2017 WL 3773721, at *1 (S.D. Fla. Jan. 12, 2017) (citing *Levy v. City of Hollywood*, 90 F. Supp. 2d 1344, 1345 (S.D. Fla. 2000)). In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *See Brooks*, 116 F.3d at 1369. To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3

## III. DISCUSSION

### A. Plaintiffs' Emotional Distress Claims Are Not Barred By DOHSA

DOHSA was enacted to provide "a uniform and effective wrongful death remedy for survivors of persons killed on the high seas." *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 214 (1986). The Act applies "[w]hen the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States." 46 U.S.C. § 30302.[2] DOHSA limits recovery to "the pecuniary loss sustained by the individuals for whose benefit the action is brought." *Id.* § 30303. The Supreme Court has held that DOHSA "announces Congress' considered judgment" on issues such as damages in maritime wrongful death cases, *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625 (1978), and "does not authorize recovery for the decedent's own losses, nor does it allow damages for nonpecuniary losses," *Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 122 (1998).

Carnival argues that DOHSA bars Plaintiffs' emotional distress claims because they seek nonpecuniary damages (*i.e.*, emotional distress damages) for the same conduct that caused Jeffrey Eisenman's death on the high seas. Carnival relies primarily on *Howard v. Crystal Cruises, Inc.*, No. 91-642, 1992 WL 194659 (E.D. Cal. Mar. 13, 1992), and *Rux v. Republic of Sudan*, 495 F. Supp. 2d 541 (E.D. Va. 2007). But *Howard* and *Rux* are both distinguishable as the plaintiffs in those cases were claiming emotional distress based solely on the death of their loved ones on the high seas, not on the events surrounding the death as personally experienced by them. In *Howard*, for instance, a passenger injured his ankle while deboarding the ship and

---

[2] Plaintiffs concede that DOHSA applies given that Jeffrey Eisenman's death occurred while the ship was sailing from Grand Turk to Puerto Rico and allegedly resulted from acts that occurred at the ship's port of call in Grand Turk. *See Ridley v. NCL (Bahamas) Ltd.*, 824 F. Supp. 2d 1355, 1359 (S.D. Fla. 2010) (King, J.) (noting that courts have "consistently interpreted DOHSA as applying to maritime incidents occurring within the territorial waters of foreign states").

later died when a blood clot traveled to his lungs. *Howard,* 1992 WL 194659, at *1. When his surviving family members moved to add claims for negligent infliction of emotional distress, the court denied the motion and found that the claims were "clearly precluded under DOHSA." *Id.* at *6. However, unlike this case, there were "no allegations [] of any other specific, emotionally-traumatizing event witnessed by the decedent's survivors beyond the loss of the decedent." *Martins v. Royal Caribbean Cruises Ltd.*, 174 F. Supp. 3d 1345, 1352 n.5 (S.D. Fla. 2016). Similarly, in *Rux*, family members of the sailors who were killed by the October 2000 terrorist bombing of the U.S.S. Cole brought emotional distress claims against the Republic of Sudan stemming from the attack that killed their loved ones. *Rux,* 495 F. Supp. 2d at 543. After a nonjury trial, the court found that the plaintiffs' claims were preempted by DOHSA where the emotional distress stemmed directly from learning of the deaths of their loved ones. *See id.* at 565; *Martins,* 174 F. Supp. 3d at 1352. Here, by contrast, the Eisenmans are claiming emotional distress based upon the totality of events surrounding Jeffrey Eisenman's death, which they experienced firsthand. This goes beyond merely learning of the death of their loved one.

Moreover, as Plaintiffs point out, several cases from this district have allowed family members to sue for "emotional distress that is *not* the anguish of loss, but rather the anguish of the events leading to the loss as directly and personal experienced by the plaintiffs." *Martins,* 174 F. Supp. 3d at 1353; *see also Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264 (S.D. Fla. 2016) (Seitz, J.); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008) (Moore, J.). For example, in *Smith,* two daughters who had witnessed their mother drown during a snorkel trip excursion in the Cayman Islands sued the cruise line for wrongful death and negligent infliction of emotional distress. *Smith,* 585 F. Supp. 2d at 1345. In denying the cruise line's motion to dismiss, the court explained that the daughters were "not seeking recovery for their

5

mother's death or her pre-death pain and suffering—only for the emotional distress that has resulted from witnessing it. Indeed, the fact that a death occurred is not essential to their claim." *Id.* at 1353. As such, the court explained, the claims did "not fall within DOHSA's ambit, and [] can hardly be said to represent 'Congress' considered judgment' on the issue." *Id.* (quoting *Higginbotham*, 436 U.S. at 625); *see also Martins*, 174 F. Supp. 3d at 1353 (denying motion to dismiss where mother sued cruise line after witnessing daughter die from eating bacteria-ridden food and ship failed to evacuate her for medical care, explaining that the mother's claims were not just based on "the anguish of loss" but on "the anguish of the events leading to the loss as directly and personally experienced by the plaintiffs"). Similarly, here, Plaintiffs' claims are based on the anguish of the events leading up to the loss of Jeffrey Eisenman, not on the loss itself. As such, Plaintiffs' emotional distress claims are not barred by DOHSA.[3]

## B. The Complaint Adequately Pleads Extreme and Outrageous Conduct

Courts sitting in admiralty typically look to the Restatement (Second) of Torts § 46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress. *See Wu v. NCL (Bahamas) Ltd.*, No. 16-22270, 2017 WL 1331712, at *2 (S.D. Fla. Apr. 11, 2017) (Scola, J.). To state a claim for intentional infliction of emotional distress under Florida law, a complaint must allege: (1) the defendant acted recklessly or intentionally; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff's

---

[3] Carnival attempts to distinguish *Smith* and *Martins* as involving claims for *negligent* (rather than *intentional*) infliction of emotional distress, arguing that such claims are "entirely different" because a plaintiff must show that she was placed in the "zone of danger" to recover emotional distress damages. (*See* Mot. 10–12.) But nothing in *Martins* suggests that the court denied the motion to dismiss under DOHSA because the mother had been placed in the "zone of danger" by eating food similar to the bacteria-ridden food that caused her daughter's death. Instead, the court simply focused on the *type of anguish* giving rise to the mother's claims. *Martins*, 174 F. Supp. 3d at 1353. Moreover, in *Smith*, the court held that the emotional distress claims survived DOHSA despite finding that the daughters had "not alleged any facts indicating that [they] were in the zone of danger." *Smith*, 584 F. Supp. 2d at 1355.

6

emotional distress; and (4) the plaintiff's emotional distress was severe. *See Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). Here, Carnival argues that the Complaint fails to plead the second element: "extreme and outrageous" conduct.

The Court disagrees. The Complaint alleges, among other things, that Carnival refused to let the Eisenmans off the ship while it was docked in Grand Turk in spite of the statement by the ship's physician that Jeffrey would need to be flown to Miami to undergo possible heart surgery and that time was of the essence. As described in the Complaint, Carnival "left Grand Turk with Jeffrey [] and his family confined onboard against their will" as the ship sailed farther away from help, forcing them to "watch on in agony as [Jeffrey] slowly slipped away." (Compl. ¶¶ 21, 23.) Accepting these allegations as true and viewing them in the light most favorable to Plaintiffs, the Court finds that the Complaint adequately pleads extreme and outrageous conduct. Accordingly, Carnival's Motion to Dismiss for failure to state a claim must be denied.[4]

## C. The Negligence Claims Are Not Improper "Shotgun" Pleadings

Finally, Carnival urges the Court to dismiss Plaintiffs' negligence claims as improper "shotgun" pleadings that "include multiple, distinct bases for liability." (*See* Mot. 18.) The Court declines to do so. It is true that one type of shotgun pleading is a complaint that "commits the sin of not separating into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322 (11th Cir. 2015). But the Complaint in this case does not commit that sin: it separates each negligence claim and emotional distress

---

[4] Carnival also seeks dismissal on grounds that the emotional distress claims "merely re-describe other torts arising from the same conduct while characterizing them as 'outrageous conduct.'" (*See* Mot. 14.) But Carnival relies primarily on defamation cases in making this argument, which implicate the "single publication/single action rule" that is "designed to discourage the erosion of free speech safeguards by the simple expedient of looking to a substitute cause of action." *Ortega Trujillo v. Banco Cent. del Ecuador*, 17 F. Supp. 2d 1340, 1343 n.1 (S.D. Fla. 1998). No such concerns are present in this case.

7

claim into seven different counts. (*See generally* Compl.) Thus, the Court declines to dismiss the negligence claims as improper "shotgun" pleadings.

## IV. CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED, AND DECREED** that Carnival's Motion to Dismiss **(DE 10)** be, and the same hereby is, **DENIED**. Carnival shall file its Answer to the Complaint within twenty (20) days from the date of this Order.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 11th day of December, 2019.

/s/ James Lawrence King
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All counsel of record