UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

LINDA J. EISENMAN, individually and as Personal Representative of the ESTATE OF JEFFREY SCOTT EISENMAN, JULIE EISENMAN and RYAN EISENMAN,

    Plaintiffs,

v.

CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINES,

    Defendant.

CASE NO. 1:19-cv-22431-JLK
Senior Judge James Lawrence King

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Carnival Corporation d/b/a Carnival Cruise Line ("Carnival") moves for partial summary judgment on Plaintiffs' Counts V, VI, and VII for Intentional Infliction of Emotional Distress, and states:

### Introduction

This dispute arises from a December 2018, Caribbean pleasure cruise onboard the Carnival *Sunshine*. While the ship was docked in Grand Turk in the Turks and Caicos, Decedent suffered a heart attack. Decedent was provided medical treatment in the ship's medical center. The shipboard physicians determined that Decedent would ultimately need either a stent or a bypass surgery—procedures that cannot be undertaken in the ship's medical center. The shipboard physicians attempted to disembark Decedent in Grand Turk, but the local hospital was not equipped to treat a patient in Decedent's condition suffering from a heart attack. Another hospital in the island chain could not accommodate Decedent either. On the ship, Decedent was given thrombolytic drugs to keep his coronary artery open. After the hospitals in the Turks and Caicos refused to accept

Decedent, the shipboard physicians considered whether to air evacuate Decedent to Miami or whether to continue the voyage to Puerto Rico for Decedent to receive appropriate treatment. The shipboard physicians did not believe that an air ambulance would arrive in time for Decedent to be treated so they, in conjunction with Linda Eisenman, decided to continue sailing to Puerto Rico for treatment. Decedent unfortunately passed away during the voyage.

Plaintiffs have brought this medical negligence action against Carnival under the Death on the High Seas Act. In addition, Plaintiffs in Counts V, VI, and VII have brought individual claims for intentional infliction of emotional distress. As fully outlined below, Carnival is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claims in Counts V, VI, and VII. While this Court previously denied Carnival's motion to dismiss on these claims, the Court now has the benefit of a better-developed record. Plaintiffs alleged that Carnival refused to assist them in evacuating Decedent from the vessel, and simply kept him onboard for no reason at all after essentially promising to air evacuate Decedent. This did not occur. Decedent had the misfortune of suffering a heart attack in an island chain that did not have the capability to treat him. The shipboard medical staff was forced to decide between sailing on to Puerto Rico or air evacuating Decedent. In consultation with Linda Eisenman, the shipboard physicians believed that progressing to Puerto Rico was Decedent's best chance for survival. The parties sharply dispute whether those decisions were negligent. But even taking the facts in the light most favorable to Plaintiffs, Carnival's actions were not extreme and outrageous as a matter of law that would support the intentional tort of intentional infliction of emotional distress. Carnival is entitled to summary judgment on Plaintiff's intentional tort claims.

## Memorandum of Law

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* FED. R. CIV. P. 56(c). The party opposing summary judgment may not rely upon the pleadings or mere denials of the allegations contained in a motion for summary judgment, but rather must adduce some evidence showing that material facts are in issue. *Celotex Corp. v. Catrett*, 277 U.S. 317, 324 (1986). Summary judgment is appropriate where the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. That there are "some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A dispute of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

1.  **Carnival is entitled to summary judgment on Plaintiffs' intentional infliction of emotional distress claims because its conduct was not extreme and outrageous as a matter of law.**

General maritime law governs cases, like this one, alleging torts committed on navigable waters. *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1320 (11th Cir. 1989). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common law rules, modifications of those rules, and newly created rules." *East River S.S. Corp. v. Transamerica*

*Delaval, Inc.*, 476 U.S. 858, 864 (1986). "Courts sitting in admiralty typically took to the standard set out in the Restatement (Second) of Torts §46 (1965) as well as state law to evaluate claims for intentional infliction of emotional distress[.]" *Brown v. Royal Caribbean Cruises, Ltd.*, 2017 WL 3773709, *2 (S.D. Fla. Mar. 17, 2017). Section 46 states that "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Id*.

To prove intentional infliction of emotional distress the plaintiff must prove: "(1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). "Outrageousness is the threshold test for recovery." *Williams v. City of Mineola*, 575 So. 2d 683, 690 (Fla. Dist. Ct. App. 1991). Outrageous conduct is that which "goes beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community." *Rubio v. Lopez*, 445 F. App'x 170, 175 (11th Cir. 2011).

"The issue of whether the Defendant's activities rise to the level of being extreme and outrageous so as to permit a claim for intentional infliction of emotional distress is a legal question in the first instance for the court to decide as a matter of law." *Rivera v. Am. Mem. Centers, Inc.*, 2006 WL 8432009, *3 (S.D. Fla. Oct. 27, 2006) (citing *Baker v. Fla. Nat'l Bank*, 559 So. 2d 284, 287 (Fla. Dist. Ct. App. 1990)). "This is an objective determination; the subjective response of the person suffering emotional distress does not control." *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1270 (S.D. Fla. Sept. 29, 2016). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (*quoting Merrick v.*

*Radisson Hotels Int'l, Inc.*, 2007 WL 1576361, *4 (M.D. Fla. May 30, 2007)). The tort is "sparingly recognized[.]" *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998). "Florida courts have repeatedly found a wide spectrum of behavior insufficiently 'outrageous.'" *Brown*, 2017 WL 3773709 at *3 (surveying case law).

A cruise passenger tort claim from outside this jurisdiction is almost directly on point. In *Casorio v. Princess Cruise Lines, Ltd.*, 2015 WL 4594169 (C.D. Cal. July 30, 2015), a cruise passenger tripped and fell, striking his head while in a port-of-call at St. Maarten. Upon returning to the ship, the shipboard medical staff informed the cruise passenger that he should go to a hospital in St. Maarten for a CT scan. The cruise passenger was scared of being abandoned in port without assistance so he remained onboard against medical advice. *Id*. at *1. Hours later, the cruise passenger's condition worsened. He was taken to a local hospital by ambulance, where the scan revealed a large subdural hematoma. The island's hospital was not equipped for neurosurgery. At that point, the cruise line arranged for an air ambulance to take the cruise passenger to a Florida hospital. The air ambulance arrived approximately 14 hours later "but by the time he was admitted, his condition was too far gone and physical examination was consistent with brain death." *Id*.

The cruise passenger's estate argued that the cruise line committed intentional infliction of emotional distress because it, among other things, failed to timely arrange for an air evacuation given the high probability that he suffered a brain injury that would require neurosurgery. *Id*. The court dismissed the claim for intentional infliction of emotional distress. In so holding, the court stated that:

> Defendant may have upset Plaintiff by sending her husband to the island's hospital, instead of calling for an air evacuation, but it was not extreme or outrageous to do that. The staff aboard the ship tried to be helpful, urging the Casorios to leave the ship and seek medical attention many hours before they agreed to do so. The fact

that they may have been able to do something more to save Mr. Casorio does not make Defendant liable for intentionally inflicting emotional distress on Plaintiff.

*Id*. at *5 (emphasis omitted).

*Kantrow v. Celebrity Cruises, Inc.*, 2020 WL 9065878 (S.D. Fla. Dec. 29, 2020), further counsels for dismissal of Plaintiffs' intentional infliction of emotional distress claims and demonstrates how truly reprehensible a defendant's actions must be to sustain this tort. Cruise passengers alleged that the cruise line "lied, concealed the truth, and/or misrepresented" a COVID-19 outbreak onboard one of its cruise ships at the beginning of the pandemic in March 2020. The cruise passengers alleged that the cruise line knew that certain passengers were exhibiting respiratory symptoms and seeking medical care, but did not enact any quarantine or physical distancing measures. *Id*. at *2. The ship was unable to dock for weeks. At least 45 passengers and crewmembers ultimately tested positive for COVID-19, and at least two people died. *Id*. The cruise passengers contended that the cruise line's behavior was extreme and outrageous to warrant intentional infliction of emotional distress. Even then, the court disagreed, and dismissed the claims. *Id*. In particular, "[w]hile the Plaintiffs' allegations describe truly objectionable behavior, the allegations simply do not rise to the level of outrageousness required by the applicable case law." *Id*.

*Garcia* is instructive as well. There, a cruise passenger alleged she was grabbed, dragged, and confined to her cabin in handcuffs after having a disagreement with a bartender on the cruise ship. *Garcia*, 838 F. Supp. 2d at 1336. Among other torts, she alleged that the cruise line's conduct amounted to intentional infliction of emotional distress. The court dismissed the claim for intentional infliction of emotional distress for failure to demonstrate "outrageous" conduct. *Id*. While the passenger alleged an intentional tort—assault and battery—this was insufficient to

sustain a claim for intentional infliction of emotional distress. *Id*. Quoting from *McCarson*, the court reasoned that "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id*. (quoting *McCarson*, 467 So. 2d at 278).

Returning here, Plaintiffs allege that Carnival:

"falsely informed" them that Decedent "was to be taken off the vessel prior to debarkation for a 20 hour voyage at sea towards Puerto Rico."

"without a valid of plausible reason or explanation, Carnival changed its mind and refused to assist [Decedent]"

They "begged, pleaded and implored Carnival personnel to assist"

They "informed Carnival that his family had purchased special travel insurance in case of a medical emergency, that expense was not a concern, and that he wanted [Decedent] off the vessel while it was docked in Grand Turk so that he could be probably cared for."

"Despite these reasonable pleas for basic assistance, and notwithstanding the extreme ease of removing [Decedent] from the vessel, Carnival misled" them, "refused to assist" them, "and the ship left the safety of the port of Grand Turk and headed to sea" with the Eisenmans "trapped onboard against their will."

[ECF No. 1 ¶¶57, 63, 70].

Plaintiffs' portrayal in the Complaint of Decedent's medical treatment onboard the *Sunshine* is contradicted by what actually occurred. The shipboard medical staff attempted to disembark Decedent in Grand Turk or another island in the Turks and Caicos, but were rebuffed by the local physicians as those facilities were ill-equipped to treat Decedent. The shipboard physicians did not believe that an air evacuation could be achieved in a timely-enough manner so they chose to proceed to Puerto Rico. The shipboard physicians discussed and considered an air evacuation, and had those conversations with Linda Eisenman. She was simply working under an "assumption" that Decedent would be evacuated by air to Miami. The Eisenmans were never confined on the

vessel. At bottom, Plaintiffs essentially contend that the shipboard medical staff was negligent and poorly communicated.

This is not the same as extreme and outrageous, *i.e.*, truly reprehensible, conduct that can sustain an intentional tort of intentional infliction of emotional distress. Plaintiff is simply criticizing the shipboard medical staff's decision-making for Decedent's medical treatment which is part-and-parcel with their medical negligence claims. Indeed, the shipboard medical staff's treatment of Decedent was not even directed at Plaintiffs at all. *See Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1277 (S.D. Fla. Mar. 30, 2013). Nor have Plaintiffs taken any issue with Carnival's conduct following Decedent's death. Cases holding that there is a "particular solicitude for the emotional vulnerability of survivors regarding improper behavior toward the dead body of a loved one[ ]" do not counsel against summary judgment in this case. *Markham v. Carnival Corp.*, 2012 WL 12866787, *3 (S.D. Fla. Dec. 3, 2012); *see also Skokan v. Royal Caribbean Cruises, Ltd.*, 2018 WL 5044603 (S.D. Oct. 17, 2018). In sum, Plaintiffs have not proven intentional infliction of emotional distress. Carnival is entitled to summary judgment on these claims.

**2.     Plaintiffs' intentional tort claims are preempted by the Death on the High Seas Act.**

Out of an abundance of caution, Carnival reasserts its argument from the motion to dismiss that Plaintiffs' intentional infliction of emotional distress claims are preempted by the Death on the High Seas Act. *See, e.g., Howard v. Crystal Cruises, Inc.*, 1992 A.M.C. 1645, 1654 (E.D. Cal. 1992); *Rux v. Republic of Sudan*, 495 F. Supp. 2d 541 (E.D. Va. 2007); *Ostrowiecki v. Versus Aggressor Fleet, Ltd.*, Nos. 07-6598, 07-6931, 2008 WL 3874609 (E.D. La. Aug. 15, 2008); *but see Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1319 (S.D. Fla. 2017); *Coriam v. Magical Cruise Co.*, No. 6:14-cv-398-Orl-22DAB, 2014 WL 12690120, at *5 (M.D. Fla. Nov. 21, 2014).

Carnival appreciates that this Court already rejected this argument and that there is authority on both sides of this proposition. Despite this, Carnival submits that the better rule would be to preclude these claims as the Death on the High Seas Act only allows for recovery of pecuniary damages. Congress did not intend for maritime wrongful death plaintiffs to supplement their Death on the High Seas Act claims with personal, emotional distress claims to evade the Act's damage limitations.

## Conclusion

Carnival is entitled to summary judgment on Plaintiffs' intentional tort claims for intentional infliction of emotional distress. Carnival's conduct was not extreme or outrageous as a matter of law. Further, Plaintiffs' intentional tort claims are preempted by the Death on the High Seas Act. This Court should grant Carnival's Motion.

(Signature on next page)

Respectfully submitted,

/s/ Cameron W. Eubanks
Christopher E. Knight
Fla. Bar No. 607363
Email: cknight@fowler-white.com

George M. Koonce, III
Fla. Bar No. 519261
Email: gkoonce@fowler-white.com

Cameron W. Eubanks
Fla. Bar No. 85865
Email: ceubanks@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:   (305) 789-9200
Facsimile:    (305) 789-9201